UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-20618
Summary Calendar
_____


FARRYL D. HOLUB,

                                              Appellant,

                      versus

FIRST NATIONAL BANK, OF EL CAMPO,

                                              Appellee.
_____

              Appeal from the United States District Court
                 for the Southern District of Texas
                         (H-95-CV-3511)
_____

                         April 27, 1999

Before HIGGINBOTHAM, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

        The debtor Farryl D. Holub contests a judgment of the
bankruptcy court, affirmed by the district court, that held non-
dischargeable certain debts he incurred to First National Bank of
El Campo.  On appeal, Holub contends that four elements of 11
U.S.C. § 523(a)(2)(A),[1] which are essential to a finding of non-

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

        [1]This provision renders debts nondischargeable when they are
for money or extensions or renewals of credit obtained by false
pretenses, false representations, or actual fraud.

dischargeability, were not proven by the bank: actual and justifiable reliance; knowledge of falsehood; deception; and proximate cause. As all of these elements are factual, we review the bankruptcy court's findings for clear error.

Two misrepresentations to the bank are at issue: Holub's homestead affidavit, which claimed homestead protection on 51.018 acres garnered, unbeknownst to the bank, from a spendthrift trust; and a crop projection letter, which misrepresented the amount of cotton Holub had available to serve as collateral for part of the bank's loan.

Holub's dealings with the bank began in the early 1980's when he secured interim financing for a home loan on a house in Houston. In the late 1980's Holub and his wife returned to El Campo, their childhood residence, where he took up farming as an occupation. To refinance the overdue home loan, Holub executed a deed of trust granting what was purported to be a first lien on the north sixty acres of a 120-acre tract of real property that he owned in Wharton County. (Holub never informed the bank that he had executed a prior deed of trust in favor of his father on the same property.)

The bank began financing Holub's farming operations until the 1991 crop year, when the bank insisted on additional collateral or a reduction in principal. At this point, the bank agreed to accept a lien on the additional 60 acres of the 120-acre tract. To ensure that the lien was not being granted on homestead property, the bank's lawyer procured a homestead affidavit from Holub which

2

described as homestead a tract of approximately 149 acres of real property owned by his wife and an additional 51 acres being an undivided 1/4 interest in approximately 204 acres of real property in Wharton County. (A person may claim a 200-acre rural homestead in Texas.) The bank's attorney asked Holub whether the 51-acre property, described as being "in trust," had been distributed, and Holub answered falsely that it had. Holub also executed a deed of trust on January 2, 1991, which provides that no part of the 120 acres pledged to the bank was part of his homestead.

Based on these representations and the extra collateral, the bank renewed the existing indebtedness and extended additional credit in late in 1991 or early 1992.

In late 1991, Holub sought additional financing for the 1992 growing season although a significant amount of the 1991 indebtedness had not yet been repaid. Holub gave the bank a computerized summary purporting to show the cotton which had been ginned and for which he was waiting payment and cotton which was stored in modules waiting to be ginned. Based on the summary, the bank agreed to cover overdrafts in Holub's checking accounts related to 1992 crop expenses until Holub collected all of the 1991 crop proceeds. Unfortunately, by the time the crop summary was provided to the bank, the cotton crop was already in the process of being sold.

Holub commenced a Chapter 12 bankruptcy in June, 1992, but he agreed voluntarily to convert the case to Chapter 7. Holub then claimed that the bank's foreclosure on the 120-acre tract

violated his homestead rights. The bankruptcy judge tried the homestead litigation before the nondischargeability case and found that Holub could belatedly assert the homestead right in that tract, notwithstanding his disclaimer to the bank in late 1991. See Truman v. Deason, (In re Niland), 825 F.2d 801 (5th Cir. 1987). During that litigation, however, the bankruptcy court warned Holub that his victory might be short-lived.

In the current case, the bank first sought a declaration of nondischargeability[2] based on Holub's misrepresentations that the 120-acre tract was not subject to a homestead claim. Holub's defense consists, inter alia, of assertions that the bank should not have believed that he would claim homestead protection over the "trust" property, although he never informed the bank that the trust was a spendthrift trust. Holub asserts that the bank should have known about the spendthrift trust, because its lawyers represented Holub's father some years previously, when the father established the spendthrift trust.

The bank also asserted that it renewed and extended crop financing for Holub based on the false representations concerning his cotton crop. Holub argues, by contrast, that the projections were "a statement of the debtor's financial condition" on which the bank could not properly rely. Section 523(a)(2)(A).

---

[2]The bank also sought a denial of Holub's discharge under 11 U.S.C. §727, but the bankruptcy court denied the broader remedy, and the bank has not appealed this ruling.

Holub generally protests the bankruptcy court's credibility determinations and avers that the court did not find that he displayed moral turpitude.

The bankruptcy court's findings reject all of Holub's contentions. The court specifically found that Holub, trained as an accountant, was well aware of the consequences of the loan documents he was signing, and he deliberately misled the bank. The court also found that the bank justifiably relied on Holub's representations. <u>Field v. Mans</u>, 516 U.S. 59, 116 S.Ct. 437 (1995); <u>Allison v. Roberts</u> (<u>In re Allison</u>), 960 F.2d 481 (5th Cir. 1992). Further, the court distinguished among the various loans and allocated the judgment carefully to the amounts which were based on the false representations. Based on our review of the briefs, the court's opinion, and pertinent portions of the record, we find no clearly erroneous fact findings. Holub's arguments might have served well as a closing argument to the trial court, but they do not meet the heavy burden of showing clear error.

<u>AFFIRMED</u>.